Clifford Daniel RAPER, and All Other Similarly Situated Employees, Plaintiffs,

v.

The STATE OF IOWA and the Iowa Department of Public Safety, Defendants.

John M. VARNUM, Larry W. Pottridge, and All Other Similarly Situated Employees, Plaintiffs,

v.

The STATE OF IOWA and Iowa Department of Transportation, Defendants.

Clinton PHILLIPS, Kurt Gunther, Larry Farrington, Steve Faber, Richard Rewis, and All Other Similarly Situated Employees, Plaintiffs,

v.

DEPARTMENT OF CORRECTIONS and the State of Iowa, Defendants.

Duane KENNEDY, and All Other Similarly Situated Employees, Plaintiffs,

v.

DEPARTMENT OF NATURAL RESOURCES and the State of Iowa, Defendants.

Civil Nos. 4–94–CV–10237, 4–94–CV–10487, 4–95–CV–10913 and 4–96–CV–10123.

United States District Court, S.D. Iowa Central Division.

June 21, 1996.

Pamela J. Prager, Finley, Alt, Smith, Scharnberg, May & Craig, P.C., Des Moines, IA, for Plaintiffs.

Jeffrey D. Farrell, Assistant Attorney General, Des Moines, IA, for Defendants.

LONGSTAFF, District Judge.

The Court has before it defendants' motions for summary judgment and a motion to dismiss. Specifically, the defendants in *Kennedy v. Department of Natural Resources,* 4–94–CV–10123 (*"Kennedy"*), moved for summary judgment on April 19, 1996; the defendants in *Raper v. State,* 4–94–CV–10237 (*"Raper"*), moved for summary judgment on April 26, 1996; the defendants in *Phillips v. Department of Corrections,* 4–95–CV–10913 (*"Phillips"*), joined in the above motions for summary judgment on May 23, 1996; and the defendants in *Varnum v. State,* 4–94–CV–10487 (*"Varnum"*), filed a motion to dismiss on May 24, 1996. All of the above motions are based on the United States Supreme Court's recent ruling in *Seminole Tribe of Florida v. Florida,* —— U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (*"Seminole"*).

On May 15, 1996, this Court granted plaintiff's motion to temporarily consolidate the four cases for the purpose of ruling on the above motions. Plaintiff filed a joint resistance to the motions on May 20, 1996,[1] and defendants filed a reply brief June 11, 1996. A hearing was held before the Court June 19, 1996. The motions are now fully submitted.

---

1. Plaintiff's resistance was filed prior to the filing of defendant's motions in *Phillips* and *Varnum.* Pursuant to this Court's order, however, the resistance shall serve as a resistance to all four motions.

## I. BACKGROUND

The above cases were filed by supervisory employees of four Iowa State departments or agencies: Iowa Department of Public Safety (*Raper*); the Department of Transportation (*Varnum*); the Department of Corrections (*Phillips*); and the Department of Natural Resources (*Kennedy*). Plaintiffs in each case seek overtime compensation they allege is owed to them pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. Generally, the FLSA requires employers to pay overtime compensation to employees for a working week of longer than forty hours. 29 U.S.C. § 207. However, "any employee employed in a bona fide executive, administrative or professional capacity" is exempt from the overtime pay provisions. 29 U.S.C. § 213(a)(1). Congress has given the Secretary of the Department of Labor the authority to promulgate rules defining executive, administrative or professional employees. 29 U.S.C. § 213(a)(1). The Secretary of Labor has established regulations which provide a "salary test" and "duties test" for determining whether an employee is an executive, administrative or professional employee and therefore, exempt under the statute. The exemption is applicable if the employee meets both the "duties" and "salary" requirements set forth in 29 C.F.R. § 541.1(1)–(f).[2] On October 28, 1995, this Court held the salary test is valid with respect to public employees.

On March 27, 1996, however, the United States Supreme Court issued its decision in *Seminole*. The Supreme Court held that the Indian Commerce Clause—which it found in-

distinguishable from the Interstate Commerce Clause for purposes of the issue at bar—does not grant Congress the authority to abrogate a State's sovereign immunity. Defendants claim *Seminole* prevents this Court from exercising subject matter jurisdiction over the cases. Accordingly, defendants seek dismissal from this Court of all cases.

## II. APPLICABLE LAW AND DISCUSSION

### A. Whether Cases can be Dismissed on Summary Judgment

█ The defendants in three of the four cases styled their *Seminole*-based motions as motions for summary judgment.[3] Plaintiffs contend the proper motion to resolve an alleged lack of subject matter jurisdiction is a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Plaintiffs are correct. *See e.g., Broussard v. United States*, 989 F.2d 171, 177 (5th Cir. 1993) (court should dismiss case for lack of subject matter jurisdiction rather than grant motion for summary judgment). The Court will therefore consider all motions as motions to dismiss for lack of subject matter jurisdiction. *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 188 (5th Cir.1986). Any dismissal entered will be without prejudice. *Id.*

### B. Whether Eleventh Amendment Precludes Federal Subject Matter Jurisdiction over These Cases

The Eleventh Amendment to the United States Constitution provides:

---

**2.** 29 C.F.R. § 541.1 provides:

The term "employee employed in a bona fide executive ... capacity" in section 13(a)(1) of the act shall mean any employee:

(a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and

(b) Who customarily and regularly directs the work of two or more other employees therein; and

(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

(d) Who customarily and regularly exercises discretionary powers; and

(e) Who does not devote more than 20 percent ... of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section ...; and

(f) Who is compensated for his services on a salary basis at a rate of not less than $225 per week beginning February 13, 1981 and $250 per week beginning February 13, 1983 ...

29 C.F.R. § 541.1.

**3.** The *Varnum* defendants styled their motion as a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1).

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

The Eleventh Amendment has been interpreted to ban almost entirely suits in federal court against unconsenting States. *Seminole,* ─── U.S. at ───, 116 S.Ct. at 1122 (*quoting Hans v. Louisiana,* 134 U.S. 1, 15, 10 S.Ct. 504, 507, 33 L.Ed. 842 (1890)).

 Congress may abrogate the States' sovereign immunity if it " 'unequivocally express[es] its intent to abrogate the immunity,' " and in doing so, is acting " 'pursuant to a valid exercise of power.' " *Id.* (*quoting Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 425, 88 L.Ed.2d 371 (1985)); *see also Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 7, 109 S.Ct. 2273, 2277, 105 L.Ed.2d 1 (1989) ("*Union Gas*") (*citing Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985)). In *Seminole,* an Indian tribe sued the State of Florida and its Governor, Lawton Chiles, in federal district court pursuant to the Indian Gaming Regulatory Act ("IGRA"). *Id.* at ───, 116 S.Ct. at 1120. The IGRA, which was passed pursuant to the "Indian Commerce Clause,"[4] imposes upon the States a duty to negotiate in good faith to enter into an Indian gaming compact. The statute expressly authorizes a tribe to bring a suit to compel negotiation in federal court. 25 U.S.C. § 2710(d)(7). Despite Congress' clear *intention* to abrogate the States' sovereign immunity, however, both the Eleventh Circuit Court of Appeals and the Supreme Court determined the Indian Commerce Clause did not vest Congress with the *authority* to do so. The federal courts therefore lacked subject matter jurisdiction to hear the action. *Seminole,* ─── U.S. ───, ───, 116 S.Ct. at 1119, 1121. As explained

by the Court, "Even when the Constitution vests in Congress complete law-making authority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting states." *Seminole,* ─── U.S. at ─── ─ ───, 116 S.Ct. at 1131–32.

In so holding, the *Seminole* Court expressly overruled the Court's earlier decision in *Union Gas,* in which a plurality of the Court held the Interstate Commerce Clause[5] *did* grant Congress the power to abrogate the States' sovereign immunity. *Seminole,* ─── U.S. at ─── ─ ───, 116 S.Ct. at 1125–28. The *Seminole* Court found "no principled distinction" ... to be drawn between the Indian Commerce Clause and the Interstate Commerce Clause. *Id.* at ───, 116 S.Ct. at 1126.

 In the present case, plaintiffs' suits are brought pursuant to the FLSA. Neither party disputes that the FLSA expresses Congressional intent to abrogate the States' Eleventh Amendment immunity. The FLSA itself defines an employer as including "any person directly or indirectly in the interest of an employer in relation to an employee and *includes a public agency.*" 29 U.S.C. § 203(d). "Public agency" is defined in the FLSA as:

> the Government of the United States; the government of a State or political subdivision thereof; any agency of the United States ..., a State or political subdivision of a State, or any interstate governmental agency.

29 U.S.C. § 203(x).

Under *Seminole,* however, an intent to abrogate immunity is not sufficient. The Interstate Commerce Clause does not grant Congress with the *authority* to do so.

Plaintiffs contend that although Congress may have stated that it enacted the FLSA pursuant to its Commerce Clause power,[6]

---

4. U.S. Const. art. I, § 8, cl. 3.

5. U.S. Const. art. I, § 8, cl. 3.

6. Section 202 of Title 29 of the United States Code, which sets forth the policy underlying the FLSA, provides in relevant part:

> (b) *It is hereby declared to be the policy of this Act, through the exercise by Congress of its power to regulate commerce among the several States* and with foreign nations, to correct and as rapidly as practicable to eliminate the conditions above referred to in such industries

this Court must determine whether Congress *could* have enacted the FLSA pursuant to another provision of the Constitution. According to plaintiffs, Congress could have acted pursuant to § 5 of the Fourteenth Amendment, under which Congress clearly has the authority to abrogate the States' Eleventh Amendment immunity. *Seminole,* —— U.S. at ——, 116 S.Ct. at 1128; *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).

In support of their argument, plaintiffs cite to *EEOC v. Wyoming,* 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983), which challenged a Wyoming state law under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 631 et seq. Specifically, the law required Wyoming State Game Division Supervisors to retire at the age of 55, unless they obtain approval from their employer to remain on the job. *Id.* at 234, 103 S.Ct. at 1059. The Supreme Court held that extension of the ADEA to state and local government employees was an appropriate exercise of power under the Commerce Clause. *Id.* at 243, 103 S.Ct. at 1064. The Court then held it "need not decide whether it [the extension of the ADEA] could also be upheld as an exercise of Congress' powers under § 5 of the Fourteenth Amendment." *Id.* In dicta, the Court further stated:

> It is in the nature of our review of congressional legislation defended on the basis of Congress' powers under § 5 of the Fourteenth Amendment that we be able to discern some legislative purpose or factual predicate that supports the exercise of that power. That does not mean, however, that Congress need anywhere recite the words "section 5" or "Fourteenth Amendment" or "equal protection," *see e.g., Fullilove v. Klutznick,* 448 U.S. 448, 476–78 [100 S.Ct. 2758, 2773–75, 65 L.Ed.2d 902] (1980) (Burger, C.J.), for "[t]he ... constitutionality of action taken by Congress does not depend on recitals of the power which it undertakes to exercise." *Woods v. Cloyd W. Miller Co.,* 333 U.S. 138, 144 [68 S.Ct. 421, 424, 92 L.Ed. 596] (1948).

*Id.*

Plaintiffs' reliance on *EEOC* is misplaced. First, the issue in *EEOC* was whether Congress was barred by the Tenth Amendment from extending the protections of the ADEA to state and local government employees. Eleventh Amendment immunity, and its limitations on Article III jurisdiction, is a completely different animal. Secondly, assuming arguendo Congress had not expressly stated it enacted the FLSA based on its power under the Commerce Clause, there is no "legislative purpose or factual predicate" which would have supported the FLSA's passage under the Fourteenth Amendment. *See EEOC v. Wyoming,* 460 U.S. at 243, n. 18, 103 S.Ct. at 1064, n. 18. As defendants note, the overtime provisions of the FLSA cannot be equated with the anti-discrimination provisions of Title VII, the latter of which clearly relate to the substantive guarantees of the Fourteenth Amendment. The Supreme Court recognized this distinction in *Fitzpatrick.* *Fitzpatrick v. Bitzer,* 427 U.S. at 453, n. 9, 96 S.Ct. at 2670, n. 9.

The same rationale can be used to distinguish the Supreme Court's holding in *Fullilove v. Klutznick,* 448 U.S. 448, 100 S.Ct. 2758, 65 L.Ed.2d 902 (1980). In *Fullilove,* the Court held that a statute requiring that minority-owned businesses be assured of receiving 10 percent of federal dollars spent on public works projects could have been enacted under § 5 of the Fourteenth Amendment, and was thus, constitutional. *Id.* at 478, 100 S.Ct. at 2774. As with the anti-discrimination provisions of Title VII, however, the Court stated the act at issue in *Fullilove* "was appropriate to ensure that those [minority-owned] businesses were not denied equal opportunity to participate in federal grants to state and local governments, *which*

---

without substantially curtailing employment or earning power.
(emphasis added).

The 1974 amendments, which extended coverage of the FLSA to private employees as well as public employees, listed among its objectives:

(2) extending the benefits and protection of the Act to workers engaged in commerce or in the production or goods for commerce, or employed in enterprises engaged in commerce or in the production of goods for commerce.

Pub.L. No. 93–259, *reprinted in,* U.S.C.C.A.C.N. 2812.

*is one aspect of the equal protection of the laws." Id.* (emphasis added). There is no evidence in the present case the FLSA or its amendments were enacted to further anti-discriminatory or equal protection objectives.

▮ Plaintiffs' claim that Congress could have enacted the 1974 Amendments under § 5 of the Fourteenth Amendment to assure state employees equal access to the courts under the First and Fourteenth Amendments necessarily fails. As noted by defendants, there is no action on the part of state or federal government officials that served to impede plaintiffs' access to the courts. The First Amendment proscribes only Congressional action which might prohibit or abridge the right of access to the courts. U.S. Const. Amendment I. Likewise, the Fourteenth Amendment is implicated only when state action is involved. *See e.g. Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) (equal protection clause inhibits only state action). The State defendants' refusal to waive their sovereign immunity does not constitute state action for this purpose.

In expressly overruling *Union Gas,* the *Seminole* Court clearly reinstates an earlier, broader view of the Eleventh Amendment. *Id.* at ——, 116 S.Ct. at 1129 ("For over a century, we have grounded our decisions in the oft-repeated understanding of state sovereign immunity as an essential part of the Eleventh Amendment.") There is no doubt the *Seminole* majority understood the scope of its decision, and nevertheless, ruled in favor of State sovereign immunity.

### C. Whether *Seminole* Applies to FLSA Actions

As an alternative argument, plaintiffs contend the present issue is governed by another United States Supreme Court decision: *Employees of the Department of Public Health & Welfare v. Department of Public Health & Welfare,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973) (*"Employees "*). In *Employees,* the Supreme Court held that Congress in fact had the power to include state employees within the scope of the FLSA, but had not exercised this authority. *Id.* at 284–285, 93 S.Ct. at 1617–1618. As a

result of *Employees,* Congress amended the FLSA to include state and local governmental employees. Fair Labor Standards Act of 1974, Pub.L. No. 93–259, § 6 (1974).

Plaintiffs claim that because the Supreme Court has not overruled *Employees,* and because *Employees* directly addresses the issue in the present case, *Employees,* rather than *Seminole* should govern. As noted by defendants, however, the *Seminole* Court made it abundantly clear that, regardless of how it may have ruled earlier, it now views the Eleventh Amendment as barring anything but consensual suits against States.

### D. Whether the State has Waived its Eleventh Amendment Immunity

▮ Plaintiffs argue the State has waived its Eleventh Amendment immunity by virtue of *Iowa Code* chapter 91A, the Iowa Wage Payment Collection Law. This statute provides for recovery from an employer—including a government or governmental subdivision—for the alleged failure to pay wages. *Iowa Code* §§ 91A.2–91A.10. Specifically, the statute authorizes the Commissioner of the Department of Labor to bring an action on behalf of the employee in "any court of competent jurisdiction." *Iowa Code* § 91A.10(2).

▮ As noted by defendants, however, plaintiffs' suit in the present case is brought under the FLSA—not Chapter 91A. Furthermore, there is no indication anywhere in Chapter 91A that a "court of competent jurisdiction" includes a *federal* court. "[I]n order for a state statute or a constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in federal court." *Port Authority Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 306, 110 S.Ct. 1868, 1873, 109 L.Ed.2d 264 (1990).

▮ Finally, the Court finds the fact the defendants have filed answers in the present litigation does not amount to a waiver of Eleventh Amendment immunity. The test for finding a waiver of sovereign immunity under the Eleventh Amendment was summarized by the Eighth Circuit Court of

Appeals in *Hankins v. Finnel,* 964 F.2d 853 (8th Cir.1992):

> A waiver must be "'stated by the most express language,'" or, if implied, it must appear "'by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.'" *Port Authority Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 305 [110 S.Ct. 1868, 1872, 109 L.Ed.2d 264] (1990) (*quoting Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 239–40 [105 S.Ct. 3142, 3146, 87 L.Ed.2d 171] (1985), and *Edelman v. Jordan,* 415 U.S. 651, 673 [94 S.Ct. 1347, 1360, 39 L.Ed.2d 662] (1974)).

*Id.* (internal quotation omitted).

Courts are split as to whether a state may also waive its Eleventh Amendment immunity by appearing in a suit. *Compare Mascheroni v. Board of Regents,* 28 F.3d 1554, 1560 (10th Cir.1994) (fact Board of Regents has appeared in litigation, "without explicitly invoking Eleventh Amendment immunity, does not, by itself, constitute a waiver of Eleventh Amendment immunity"); *Paul N. Howard Co. v. Puerto Rico Aqueduct Sewer Authority,* 744 F.2d 880 (1st Cir.1984), *cert. denied,* 469 U.S. 1191, 105 S.Ct. 965, 83 L.Ed.2d 970 (1985) (fact governmental corporation "not only appeared but filed a counterclaim and a third-party complaint" caused court to find waiver of immunity).

In the present case, the Court finds the facts do not support the State waived its immunity by "the most express language," or acted in such a way that a waiver is the only reasonable interpretation of its conduct. *Hankins v. Finnel,* 964 F.2d at 856. In fact, the State raised the Eleventh Amendment immunity argument in its first motion for summary judgment with respect to the *Raper* case. It was not until the Supreme Court's decision on March 27, 1996, that the State agencies felt they had reason to again assert immunity. The Court finds the motions were raised on a timely basis shortly after *Seminole* was filed. Furthermore, Rule 12(h)(3) of the federal rules of civil procedure clearly provides that the lack of subject matter jurisdiction may be raised by any party or by a court sua sponte at any time. Fed.R.Civ.P. 12(h)(3). *See also Bue-*

*ford v. Resolution Trust Corp.,* 991 F.2d 481, 485 (8th Cir.1993) (affirming that lack of subject matter jurisdiction may be raised at any time).

### III. CONCLUSION

For the reasons discussed above, the Court finds it lacks subject matter jurisdiction over the above-captioned cases. The cases are therefore, dismissed without prejudice.

IT IS SO ORDERED.