Royce L. ANTHONY, Kenneth J. Arduser, Richard D. Aringdale, Fred O. Burger, Steven R. Conlon, Joseph L. Diaz, Loren E. Dykeman, James K. Ehresman, Robert W. Elliott, Blaine Goff, Terrance Hoil, McKinnely Jontz, Jr., Ronald G. Makin, Larry G. Mathers, George H. Mayer, Timothy P. McDonald, Lee J. Meinert, Larry L. Noble, Bradford J. Thompson, Earl E. Usher, Jon R. Wilson, and Charles R. Wood, Appellants,

v.

STATE of Iowa and Iowa Department Of Public Safety, Appellees.

No. 99–0515.

Supreme Court of Iowa.

Sept. 6, 2001.

Pamela J. Walker of Sherinian & Walker Law Firm, West Des Moines, and R. Todd Gaffney of Finley, Alt, Smith, Scharnberg, Craig, Hilmes & Gaffney, P.C., Des Moines, for appellants.

Thomas J. Miller, Attorney General, and Jeffrey D. Farrell, Assistant Attorney General, for appellees.

CARTER, Justice.

Plaintiffs appeal from the grant of summary judgment for the State in their class action for overtime wages under the Fair Labor Standards Act (FLSA) and Iowa Code chapter 91A.[1] The State cross-appeals, urging that it is immune from plaintiffs' claims by reason of the decision in *Alden v. Maine*, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). The district court rejected the State's claim of sovereign immunity but granted the State summary judgment based on a federal regulation purporting to allow correction of wage-basis methodology that would otherwise render an employee subject to the

---

1. The named defendants in this action who are the appellees and cross-appellants are the State of Iowa and the Iowa Department of Public Safety. They will be referred to collectively as the State throughout this opinion.

act. On February 14, 2001, this court filed an opinion affirming the district court's decision on the merits and declining to rule on the sovereign-immunity issue. A petition for rehearing filed by plaintiffs was subsequently granted and that opinion, which was never published, was withdrawn. After again reviewing the record and considering the arguments presented in the original briefs and on the petition for rehearing, we reverse the judgment of the district court on plaintiffs' appeal but affirm that court's rejection of the State's sovereign-immunity defense.

Plaintiffs are current and former employees of the Iowa Department of Public Safety in executive and administrative positions. Because of the nature of their duties, the State asserts that they are not subject to the overtime pay requirements of the FLSA. Plaintiffs maintain that they are subject to such requirements because the manner in which they are paid includes deductions for disciplinary suspensions.

Plaintiffs originally filed an action in the United States District Court for the Southern District of Iowa seeking to establish their position. That court initially granted plaintiffs' motion for summary judgment on the merits of their claim and set a hearing on damages for a later date. Before that hearing could be held, the Supreme Court filed the decision of *Seminole Tribe v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), establishing the immunity of states under the Eleventh Amendment with respect to similar claims. Based on that decision, the district court dismissed plaintiff's action on jurisdictional grounds. *Raper v. Iowa*, 940 F.Supp. 1421 (S.D.Iowa 1996). That decision was affirmed on appeal. *Raper v. Iowa*, 115 F.3d 623 (8th Cir.1997).

At the conclusion of the federal litigation, plaintiffs filed the present action in state court. They reasserted the claim made in the federal litigation that they were not exempt from the application of the FLSA overtime requirements because of the State's disciplinary policy calling for suspensions without pay.

Plaintiffs and the State each filed motions for summary judgment. The State's motion relied on 29 C.F.R. § 541.118(a)(6), the "window of correction" regulation, which allows an employer to preserve an employee's exempt status under the FLSA if it corrects past violations of the salary test, which the employer is required to meet. It also claimed sovereign immunity based on the *Alden* decision. The district court rejected the sovereign-immunity claim. Relying on the window-of-correction regulation, the court granted the State's motion for summary judgment based on the assurance that the State had reimbursed those executive and administrative employees who had suffered deductions from their regular salaries for disciplinary reasons and had amended its personnel policies to preclude similar deductions from the salaries of the plaintiff class members in the future.

### I. *The Sovereign–Immunity Issue.*

Because both parties have requested that we initially resolve the sovereign-immunity issue raised in the State's appeal, we consider that matter first. The critical question on that issue is whether the State has waived the sovereign immunity to which it is otherwise entitled under the *Alden* decision.

A. *The Alden decision.* In *Alden*, probation officers employed by the State of Maine brought a private suit for damages against the state in federal court alleging violation of the overtime provisions of the

FLSA. *Alden,* 527 U.S. at 711–12, 119 S.Ct. at 2246, 144 L.Ed.2d at 652. As in the present case, the federal district court dismissed the plaintiffs' claim after the Supreme Court decided the *Seminole Tribe* case. The court of appeals affirmed. *Mills v. Maine,* 118 F.3d 37, 55 (1st Cir. 1997). The *Alden* plaintiffs then brought the same suit in state court. Maine's appellate court ultimately found that the state was protected from suit under the doctrine of sovereign immunity. *Alden v. State,* 715 A.2d 172, 176 (Me.1998). The Supreme Court granted certiorari and held "that the powers delegated to Congress under Article I of the United States Constitution do not include the power to subject nonconsenting States to private suits for damages in state courts." *Alden,* 527 U.S. at 712, 119 S.Ct. at 2246, 144 L.Ed.2d at 652.

In its *Alden* opinion, the Supreme Court discussed at length the preconstitutional history of the doctrine of sovereign immunity as well as application of the doctrine after the Constitution was adopted and later amended. The court emphasized that the states' immunity from private suits for damages was a fundamental component of the states' sovereignty before the Constitution was adopted and was an integral consideration throughout the ratification process. *Id.* at 713, 119 S.Ct. at 2246–47, 144 L.Ed.2d at 653–54. The Court concluded that the Tenth Amendment removes "[a]ny doubt regarding the constitutional role of the States as sovereign entities ...," as it reserves all powers to the states that are not delegated to the federal government by the Constitution. *Alden,* 527 U.S. at 713–14, 119 S.Ct. at 2247, 144 L.Ed.2d at 653.

Following *Alden,* at least three state appellate courts have held that states are protected by the sovereign-immunity doctrine from private suits for damages based on the FLSA unless the state waives its immunity. *King v. State,* 260 Neb. 14, 614 N.W.2d 341, 347 (2000); *Allen v. Fauver,* 327 N.J.Super. 14, 742 A.2d 594, 598 (App. Div.1999); *Commonwealth v. Luzik,* 259 Va. 198, 524 S.E.2d 871, 877 (2000).

B. *Whether a waiver of sovereign immunity has been established.* One of the legal theories on which plaintiffs' claims are based in the present litigation involves the Iowa Wage Payment Collection Law, Iowa Code chapter 91A (1995). They urge that in combination the applicable statutes and administrative regulations classify the overtime compensation required by the Fair Labor Standards Act as "wages" subject to collection by legal action under Iowa Code sections 91A.8 and 91A.10(3). They urge that this statutory scheme is a waiver of the State's sovereign immunity under *Alden.*

1. *The issue-preclusion problem.* In considering the consequences of chapter 91A on the State's sovereign immunity, we first encounter a potential issue-preclusion problem. The federal district court in which the plaintiffs first presented their claims rejected their attempt to establish a waiver of the State's sovereign immunity based on chapter 91A. The federal court's ruling on the sovereign-immunity issue was a final judgment on the merits of that jurisdictional issue. The federal court clearly had jurisdiction to determine its own jurisdiction.

Although the issue concerning waiver of sovereign immunity under the Eleventh Amendment in the federal litigation was similar to the issue of waiver of sovereign immunity under the Tenth Amendment in the present litigation, a close reading of

the federal court ruling discloses reasons why it should not be given preclusive effect on the interpretation of chapter 91A. In rejecting plaintiffs' arguments on waiver of sovereign immunity based on chapter 91A, the federal court stated:

> As noted by defendants, however, plaintiffs' suit in the present case is brought under the FLSA—not Chapter 91A. Furthermore, there is no indication anywhere in Chapter 91A that a "court of competent jurisdiction" includes a *federal* court. "[I]n order for a state statute or a constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in federal court."

*Raper*, 940 F.Supp. at 1426 (citation omitted). This ruling did not consider whether chapter 91A allows plaintiffs to pursue their FLSA overtime claims in an action brought under that chapter in the Iowa courts.

■ 2. *The statutory pay plan.* For purposes of wage collections under sections 91A.8 and 91A.10(3):

> *"Wages"* means compensation owed by an employer for:
>
> *a.* Labor or services rendered by an employee, whether determined on a time, task, piece, commission, or other basis of calculation.
>
> *b.* Vacation, holiday, sick leave, and severance payments which are due an employee under an agreement with the employer or under a policy of the employer.
>
> *c.* Any payments to the employee or to a fund for the benefit of the employee, including but not limited to payments for medical, health, hospital, welfare, pension, or profit-sharing, which are due an employee under an agreement with the employer or under a policy of the employer. The assets of an employee in a fund for the benefit of the employee, whether such assets were originally paid into the fund by an employer or employee, are not wages.
>
> *d.* Expenses incurred and recoverable under a health benefit plan.

Iowa Code § 91A.2(7).

Section 91A.2(4) defines employer so as to include those identified as persons in Iowa Code chapter 4. Iowa Code section 4.1(20) includes state governmental agencies within the definition of "person." The State and its agencies are thus classified as employers subject to the Iowa Wage Payment Collection Law.

The State urges that, notwithstanding its liability for wage payments under chapter 91A, such liability only includes payments mandated by state law. Because plaintiffs' claims are based on federal law, the State urges that they do not fall within the chapter 91A collection procedure. We disagree.

The critical language in the section 91A.2(7) definition of wages is "compensation owed by an employer." Although the impetus for state wage policy involving FLSA overtime pay is the mandate of the federal legislation, the State has acceded to that mandate in a manner that establishes the resulting overtime remuneration as compensation owed by an employer. Iowa Code section 19A.9(2) provides that the director of the department of personnel shall adopt rules providing

> [f]or pay plans within the purview of an appropriation made by the general assembly and not otherwise provided by law for all employees in the executive

branch of state government, excluding employees of the state board of regents, after consultation with the governor and appointing authorities with due regard to the terms of collective bargaining agreements negotiated under chapter 20 and after a public hearing held by the commission.... Each employee in the executive branch, excluding employees of the state board of regents, shall be paid at one of the rates set forth in the pay plan for the class of position in which employed and, unless otherwise designated by the commission, shall begin employment at the first step of the established range for the employee's class.

The rules adopted pursuant to this statute speak to the issue of FLSA overtime compensation in two places. First, Iowa Administrative Code rule 581–1.1 provides by way of definition:

"*Overtime*" means those hours that exceed 40 in a workweek for which an employee is entitled to be compensated.

"*Overtime covered class, employee, or position*" means a class, employee, or position determined to be eligible for premium overtime compensation in accordance with the federal Fair Labor Standards Act.

Second, Iowa Administrative Code rule 581–4.11(2) provides:

*Eligible job classes.* An employee in a job class designated as overtime eligible shall be paid at a premium rate (one and one-half hours) for every hour in pay status over 40 hours in a workweek.

We are convinced that the statutory scheme for deriving pay plans has been implemented in a manner that includes FLSA overtime remuneration as compensation owed by an employer. Sections 91A.8 and 91A.10(3) provide an express consent to sue in the Iowa courts for purposes of recovering any compensation thus owed.[2] We affirm the judgment of the district court rejecting the State's sovereign-immunity claim.

## II. *The Window of Correction Regulation.*

Under the FLSA, employers generally must pay their employees at least one and one-half times their regular rate of pay for hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1). Employees who are employed in executive, administrative, or professional capacities are exempt from that overtime requirement. 29 U.S.C. § 213(a)(1). The Secretary of Labor is authorized to define by rule the scope of those exemptions. *Id.* Under these rules, three tests must be satisfied for an executive, administrative, or professional employee to be considered exempt. These are a "duties" test (29 C.F.R.

---

**2.** These statutes provide:

When it has been shown that an employer has intentionally failed to pay an employee wages or reimburse expenses pursuant to section 91A.3, whether as the result of a wage dispute or otherwise, the employer shall be liable to the employee for any wages or expenses that are so intentionally failed to be paid or reimbursed, plus liquidated damages, court costs and any attorney's fees incurred in recovering the unpaid wages and determined to have been usual and necessary.

Iowa Code § 91A.8.

The provisions of subsections 1 and 2 [providing for suit by the commissioner of labor as the employee's assignee] shall not be construed to prevent an employee from settling or bringing an action for damages under section 91A.8 if the employee has not assigned the claim under subsection 1.

Iowa Code § 91A.10(3).

§ 541.1); a "salary level" test (29 C.F.R. § 541.1(f)); and a "salary basis" test (29 C.F.R. § 541.118). Only the salary-basis test is at issue in this case.

■ An employee is considered to be paid on a salary basis if "he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.118(a). In order to qualify for exempt status, "the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked." *Id.* The rule makes an exception for "[p]enalties imposed in good faith for infractions of safety rules of major significance." 29 C.F.R. § 541.118(a)(5). But, other reductions in pay such as disciplinary suspensions without pay are impermissible reductions that destroy an employee's exempt status. *Auer v. Robbins*, 519 U.S. 452, 456, 117 S.Ct. 905, 909, 137 L.Ed.2d 79, 87 (1997). The State's disciplinary suspension policies applicable to the plaintiff-employees did provide for disciplinary suspensions without pay, and that policy had been invoked in at least eight instances.

■ The Secretary's regulations also contain a "window of correction" clause. The rule implementing that clause provides:

The effect of making a deduction which is not permitted under these interpretations will depend upon the facts in the particular case. Where deductions are generally made when there is no work available, it indicates that there was no intention to pay the employee on a salary basis. In such a case the exemption would not be applicable to him during the entire period when such deductions were being made. *On the other hand, where a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future.*

29 C.F.R. § 541.118(a)(6) (emphasis added).

In the *Auer* case, the Supreme Court adopted the Secretary of Labor's interpretation of when a category of employees is considered to have satisfied the salary-basis test. It held that an employer has not demonstrated an objective intent to treat a category of employees as exempt from the FLSA if that employer has an employment policy that creates a significant likelihood of disciplinary pay deductions or has an actual practice of making disciplinary deductions from such employees' pay. *Auer*, 519 U.S. at 461–63, 117 S.Ct. at 911–12, 137 L.Ed.2d at 90–91. As to the category of employees involved in *Auer*, the court held that no clear inference could be drawn as to the likelihood of a sanction being applied to the employees because the employer's policy manual did not specifically identify the employees as being subject to disciplinary pay deductions. The Court explained that in the absence of actual deductions the Secretary's interpretation required "a clear and particularized policy—one which 'effectively communicates' that deductions will be made in specified circumstances." *Id.* at 461, 117 S.Ct. at 911, 137 L.Ed.2d at 90.

One employee in the group of employees before the Court in the *Auer* case had received a disciplinary pay deduction. As

to that employee, the Court determined that the employer was entitled to a window-of-correction defense under 29 C.F.R. § 541.118(a)(6). In so holding, the Court stated:

> One small issue remains unresolved: the effect upon the exempt status of Sergeant Guzy ... of the one-time reduction in his pay. The Secretary's regulations provide that if deductions which are inconsistent with the salary-basis test—such as the deduction from Guzy's pay—are made in circumstances indicating that "there was no intention to pay the employee on a salary basis," the exemption from the FLSA is "[not] applicable to him during the entire period when such deductions were being made." Conversely, "where a deduction not permitted by [the salary-basis test] is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future."

*Id.* at 463, 117 S.Ct. at 912, 137 L.Ed.2d at 91 (citation of regulation omitted).

The *Auer* decision was initially interpreted so as to allow the window of correction to be invoked in any instance in which the deductions were for reasons other than lack of work. *Paresi v. City of Portland,* 182 F.3d 665, 668 (9th Cir.1999); *DiGiore v. Ryan,* 172 F.3d 454, 465 (7th Cir.1999); *Davis v. City of Hollywood,* 120 F.3d 1178, 1180 (11th Cir.1997); *Childers v. City of Eugene,* 120 F.3d 944, 947 (9th Cir.1997); *Balgowan v. New Jersey,* 115 F.3d 214, 219 (3d Cir.1997). Following this first wave of appellate decisions, the second circuit in *Yourman v. Giuliani,* 229 F.3d 124, 128 (2d Cir.2000), and the sixth circuit in *Takacs v. Hahn Automotive Corp.,* 246

F.3d 776, 783 (6th Cir.2001), took the position that the window-of-correction defense is not available to an employer who has a policy of making pay deductions from salaries due to disciplinary infractions. The seventh circuit and ninth circuit have also embraced this view, thus abandoning their earlier pronouncements. *See Whetsel v. Network Property Servs.,* 246 F.3d 897, 902 (7th Cir.2001); *Klem v. County of Santa Clara,* 208 F.3d 1085, 1094 (9th Cir.2000).

We find the views expressed in the more recent federal cases to be persuasive. The *Auer* case interpreted the FLSA and the Secretary of Labor's regulations to provide that, if an employer is shown to have a general policy of making deductions from salaries for disciplinary violations, its pay plan for that class of employees is deemed not to be on a salary basis. Nothing contained in 29 C.F.R. § 541.118(a)(6) purports to nullify that interpretation. The factual setting in which the Court in *Auer* applied the window of correction was one in which no policy of docking pay was found to exist. Consequently, we favor an interpretation of the regulation in which the window of correction is only available to those employers who do not have an established policy of deducting their employees' pay for disciplinary reasons yet, in a few selected instances, have imposed such discipline. *See Whetsel,* 246 F.3d at 901; *Takacs,* 246 F.3d at 783.

We conclude that the record on the summary judgment motion revealed without dispute that the State did have a policy of imposing deductions from pay for disciplinary reasons with respect to the members of the plaintiff class. Based on our interpretation of the applicable federal law, that circumstance is outcome determinative on the issue of liability. The district court

was wrong in granting summary judgment for the State. It should have granted summary judgment for plaintiffs on the issue of liability.

We have considered all issues presented and conclude that the State's claim of sovereign immunity should be rejected. The district court's grant of summary judgment to the State, based on the window-of-correction regulation, is reversed. The case is remanded to the district court with directions to grant summary judgment for the plaintiffs on the issue of liability and to proceed as necessary in the determination of damages. All costs on appeal are assessed to the State.

**REVERSED AND REMANDED ON APPEAL; AFFIRMED ON CROSS APPEAL.**

SNELL, S.J.,* participates in lieu of STREIT, J., who takes no part.

* Senior Judge assigned by order pursuant to Iowa Code section 602.9206 (2001).