STATE of Iowa, Appellant,

v.

Joe C. DVORAK and John Pokorny, as Fence Viewers for Oneida Township, Tama County, Iowa, and Alvin Husak, Oneida Township Clerk, Tama County, Iowa, Appellees.

No. 2–59791.

Supreme Court of Iowa.

Jan. 18, 1978.

Rehearing Denied Feb. 17, 1978.

Richard C. Turner, Atty. Gen., Clifford E. Peterson and James C. Davis, Asst. Attys. Gen., for appellant.

John Werner, Toledo, for appellees.

Heard by MOORE, C. J., and RAWLINGS, LeGRAND, UHLENHOPP, and HARRIS, JJ.

RAWLINGS, Justice.

In district court certiorari proceeding the State of Iowa invoked sovereign immunity from jurisdiction of fence viewers convened pursuant to Chapter 113, The Code 1975. From a holding adverse to the State it appeals. We affirm.

Vernon Pohlman, a Tama County landowner, sought determination by Oneida Township fence viewers as to fencing responsibilities along a line where Pohlman's property adjoined State owned land.

The fence viewers subsequently caused notice of hearing to be given the State. It responsively filed in Tama District Court a petition for writ of certiorari to fence viewers, thereby alleging said inferior tribunal was acting in excess of its jurisdiction.

In essence, the State claims its sovereign immunity was not waived as to actions or proceedings under Ch. 113 and the fence viewers have no subject matter jurisdiction in this case. More specifically, the State asserts the doctrine of sovereign immunity applies except as explicitly waived. It contends § 613.8, which waives sovereign immunity in property-related actions, is inapplicable because a Ch. 113 controversy does not involve title. The State further posits § 613.8 applies only to actions in a "court" and fence viewers do not so qualify.

The fence viewers controvert these contentions and deny they have acted in excess of their jurisdiction. The court below agreed and annulled the writ.

We elect to resolve this appeal upon one issue alone: Did the State, by becoming a landowner, waive sovereign immunity from jurisdiction of fence viewers to determine a Code Ch. 113 controversy?

I. Certiorari proceedings are tried and reviewed on appeal as ordinary actions. This means our review is not de novo. We decide only whether district court erred in determining, as a matter of law, the fence viewers did not exceed their jurisdiction. *Dunphy v. City Council of City of Creston*, 256 N.W.2d 913, 916 (Iowa 1977); *Giesey v. Bd. of Adjustment of Iowa City*, 229 N.W.2d 258, 259–260 (Iowa 1975); Iowa R.Civ.P. 317, 318; Iowa R.App.P. 4.

II. At the outset, there is no real question, aside from asserted immunity, as to the fence viewers' instant subject matter jurisdiction.

Section 113.3 says:

"The fence viewers shall have power to determine any controversy arising under this chapter, upon giving five days notice in writing to the opposite party or parties, prescribing the time and place of meeting to hear and determine the matter named in said notice. Upon request of any landowner, the fence viewers shall give such notice to all adjoining landowners liable for the erection, maintenance, rebuilding, trimming, or cutting back, or repairing of a partition fence, or to pay for an existing hedge or fence."

Noticeably, no question is here raised regarding sufficiency of such notice or request.

Rather, the basic issue before us is confined to continued viability of sovereign immunity in Iowa within the ambit of this fence dispute.

Until relatively recent times the sovereign could not be sued without its statutory consent or waiver of immunity. See generally *Megee v. Barnes,* 160 N.W.2d 815 (Iowa 1968); *Boyer v. Iowa High School Athletic Assn.,* 256 Iowa 337, 127 N.W.2d 606 (1964); *Montandon v. Hargrave Construction Co.,* 256 Iowa 1297, 1299–1301, 130 N.W.2d 659, 660–661 (1964); *Rhodes v. Iowa State Highway Comm.,* 250 Iowa 416, 419, 94 N.W.2d 97, 99 (1959); *Collins v. State Board of Social Welfare,* 248 Iowa 369, 372–373, 81 N.W.2d 4, 6 (1957); *Wittmer v. Letts,* 248 Iowa 648, 853, 80 N.W.2d 561, 564 (1957).

In fact, this has long been a generally accepted juristic principle. See Annots., 8 A.L.R. 995, 42 A.L.R. 1464, 50 A.L.R. 1408; 72 Am.Jur.2d, States, Etc., § 100; 81A C.J.S. States, § 298.

Correlatively, as articulated in 3 Sutherland, Statutory Construction, § 62.01 (4th ed. 1974):

"Statutory provisions which are written in such general language as to make them reasonably susceptible to being construed as applicable alike both to the government and to private parties are subject to a presumptive rule of construction which exempts the government from their operation in the absence of other particular indicia supporting a contrary result in particular instances."

Also, statutes in derogation of sovereignty are strictly construed. *Montandon v. Hargrave Construction Co.,* 256 Iowa at 1303, 130 N.W.2d at 662; cf. *Graham v. Worthington,* 259 Iowa 845, 853–855, 146 N.W.2d 626, 632–633 (1966). See also *Sutherland,* § 62.01 at 1303.

On the other hand, any restriction upon availability of judicial recourse in this area is today generally disapproved. See Prosser, Law of Torts, § 131 at 984–987 (4th ed.

1971); Comment, 59 Iowa L.Rev. 360, 360–361 & nn. 3 & 4 (1973).

Conceding existence of that view a majority of this court recently opted, however, for corrective legislation as opposed to open-ended judicial abrogation. See e. g., *Megee v. Barnes,* 160 N.W.2d at 816–817; *Boyer v. Iowa High School Athletic Assn.,* 256 Iowa at 346–349, 127 N.W.2d at 611–613. This stand was in large part premised upon Iowa R.Civ.P. 9, which then provided in relevant part: "It [the State] may be sued as provided by any statutes in force at the time."

Unquestionably, considerable legislation has been locally passed which waives immunity in some major areas.

First, § 613.8, a 1935 enactment, gave suit consent to actions:

" * * * involving the title to real estate, the partition of real estate, the foreclosure of liens or mortgages against real estate or the determination of the priorities of liens or claims against real estate, for the purpose of obtaining an adjudication touching or pertaining to any mortgage or other lien or claim which the state may have or claim to the real estate involved."

Then, in 1966, our general assembly enacted the Iowa Tort Claims Act, Code Ch. 25A, and in 1967 the Municipal Tort Claims Act, Code Ch. 613A. See also § 613.11.

And, 1973 saw this court abandon its prior total abstention policy. *Kersten Co., Inc. v. Department of Social Services,* 207 N.W.2d 117 (Iowa 1973). In brief, *Kersten* holds the State impliedly but effectively waived immunity from suit out of contract by voluntarily entering into such a relationship. 207 N.W.2d at 119–121.

Significantly, the general assembly also accepted our amendment of Rule 9, which removed any reference to actions *against* the State. 1974 Regular Session, Sixty-Fifth General Assembly, Ch. 1284.

Although these fence viewers suggest total abrogation of sovereign immunity they make no analysis of Rule 9 as amended and place relatively little emphasis on *Kersten.*

Furthermore, wholesale rejection of the immunity doctrine on authority of *Kersten* and new Rule 9 would defy express exceptions in §§ 25A.14 and 613A.4. Be that as it may there is instantly no need and we are not now disposed to hold sovereign immunity has been totally desiccated.

Nevertheless, this much is now well settled: The combination of *Kersten* and Rule 9 as amended leads to the conclusion that consent to suit or waiver of sovereign immunity need not always be restricted to legislative enactment. In other words, conduct of the State through its agencies, officers, or employees such as in *Kersten* may effectuate waiver or manifest consent. Accord *Charles Gabus Ford v. Iowa St. Highway Com'n*, 224 N.W.2d 639, 646 (Iowa 1974).

By the same token, absence of specific reference to the State in Ch. 113 is today of no critical importance. See generally 3 Sutherland, § 62.03.

■ III. The question resultantly posed is whether State immunity was by conduct waived as to the fence viewer proceedings initiated by Pohlman. Because nonstatutory sources of waiver are perforce first examined, facts underlying the State's involvement in this case become relevant.

Although the sovereign was made defendant in Pohlman's fence viewer proceeding, it appears the involved land was acquired by the State Conservation Commission from a railroad as an abandoned right of way. Such acquisition was apparently effected pursuant to Code § 107.24, which says in material part:

"The commission is hereby authorized and empowered to:

"1. * * *

"2. Acquire by purchase, condemnation, lease, agreement, gift and devise lands or waters suitable for the purposes hereinafter enumerated, and rights of way thereto, and to maintain the same for [hunting, trapping, fishing, and refuge or nursery purposes].

"3. Extend and consolidate lands or waters suitable for the above purposes by exchange for other lands or waters * *."

See also § 111.7 et seq.

Thus the State through said commission became a landowner. And just as the sovereign is now required to abide by the terms of its contracts, *Hutchinson Nursing Home, Inc. v. Burns*, 236 N.W.2d 312, 317 (Iowa 1975), it must accept those obligations and duties incident to land ownership.

■ Numerous responsibilities were imposed at common law upon adjoining landowners. Basically, a landowner may not make such unreasonable use of property as to deprive an adjacent owner of the use and enjoyment of his land. 1 Am.Jur.2d Adjoining Landowners, § 2; 2 C.J.S. Adjoining Landowners § 2.

Noticeably, however, one duty not found in common law, *Jacobs v. Stover*, 243 N.W.2d 642, 644 (Iowa 1976), is provided by § 113.1: "The respective owners of adjoining tracts of land shall upon written request of either owner be compelled to erect and maintain partition fences, or contribute thereto, and keep the same in good repair throughout the year."

In light of the foregoing we now hold the State, by affirmative action in acquiring the involved land, attendantly subjected itself to properly invoked Ch. 113 fence viewer jurisdiction.

Under existing circumstances, there is no need to presently decide whether § 613.8 can be said to waive sovereign immunity in a Ch. 113 proceeding.

For reasons above stated, this appeal is without merit.

AFFIRMED.