# IN THE SUPREME COURT OF IOWA

No. 07–1879

Filed May 25, 2012

**TINA LEE,**

Appellee,

vs.

**STATE OF IOWA, POLK COUNTY CLERK OF COURT,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, James M. Richardson, Judge.

Further review of a decision by the court of appeals rejecting a claim of sovereign immunity and affirming a district court judgment on a jury verdict based on a claim under the Federal Family and Medical Leave Act by an employee against the State. **DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS.**

Thomas J. Miller, Attorney General, Jeffrey S. Thompson, Deputy Attorney General, and Grant K. Dugdale, Assistant Attorney General, for appellant.

Paige E. Fiedler and Brooke C. Timmer of Fiedler & Timmer, P.L.L.C., Urbandale, for appellee.

**CADY, Chief Justice.**

In this employment case, we must primarily decide whether the State of Iowa is immune from claims under the self-care provision of the Family and Medical Leave Act (FMLA) in state court. The district court denied the State's posttrial motions for a judgment notwithstanding the verdict or a new trial asserting Eleventh Amendment sovereign immunity after a jury awarded damages to a state employee based on a claim for violating the Act. The Iowa Court of Appeals affirmed. On further review, we vacate the decision of the court of appeals, reverse the judgment of the district court, and remand for further proceedings.

## I. Background Facts and Prior Proceedings.

Tina Lee worked in the office of the Polk County Clerk of Court as a state employee. She began working for the clerk's office in 1981 as a full-time employee in the traffic division. Lee received positive yearly performance evaluations throughout much of her employment and was promoted numerous times. At the time of her termination, she held the position of lead worker in the records department.

The employee policy handbook distributed by the office of the state court administrator contained a section governing the various forms of leave available to employees, including a section on family and medical leave under the FMLA. The policy read in part:

> Employees who have worked at least 12 months and at least 1,250 hours during the previous 12 months may request up to 12 weeks of job protected leave in a fiscal year, *pursuant to provisions of the federal Family and Medical Leave Act (FMLA) of 1993.*

(Emphasis added.)

The provisions also required employees approved for FMLA leave "due to the employee's own serious health condition (including childbirth

and recovery) . . . to exhaust all paid sick leave, vacation, and comp time before unpaid leave" would be granted. Throughout the section of the handbook entitled "Family and Medical Leave Act (FMLA)," the leave was described as "FMLA leave," and the provisions repeatedly identified the FMLA as the source of the leave. The FMLA leave provisions were in place at all relevant times to this case.

In 1997, Lee was diagnosed with anxiety disorder.[1] She periodically took time away from work when her anxiety disorder would lead to bouts of depression. In the fall of 2004, Lee requested FMLA leave to cope with stress-induced anxiety brought about by family turmoil. She submitted a completed FMLA request form on October 20, 2004, after visiting with her treating physician. The form included her physician's signature indicating Lee was experiencing a serious health condition that was expected to last until November. Lee believed this form enabled her to take time off work during the next month when she felt it was necessary until she recovered. As a result, she left work throughout the remainder of the month when she was unable to work due to her medical condition. Lee previously used FMLA leave while working at the clerk's office to recover from neck surgery, care for her daughter, and for surgery on both of her feet.

On November 3, 2004, Lee returned to work after having been gone for several days. Following a meeting with her supervisor, Lee was demoted for failing to follow absentee policies by calling in to work each day she was absent. She was suspended for three days and asked to surrender her key to the office. On November 8, Lee called her supervisor because she was again unable to come to work. The following

---

[1]The parties have stipulated that Lee suffers from a serious health condition.

day, Lee did not report to work and did not call. On November 10, Lee's supervisor sent her a letter terminating her employment for job abandonment.

Lee filed a petition against the State of Iowa in the Polk County District Court under 29 U.S.C. § 2612(a)(1)(D) (2000), the self-care provision of the FMLA. In its answer, the State asserted the affirmative defense of sovereign immunity under the Eleventh Amendment of the United States Constitution and filed a motion for summary judgment on the same grounds. In addition to claiming its constitutionally based immunity was not abrogated by Congress in enacting the self-care provision of the FMLA, the State asserted summary judgment was proper because it did not otherwise expressly waive its immunity and did not impliedly waive its immunity by placing the FMLA provisions in its handbook. Relying on the United States Supreme Court decision in *Nevada Department of Human Resources v. Hibbs*, 538 U.S. 721, 726, 123 S. Ct. 1972, 1976, 155 L. Ed. 2d 953, 962 (2003), and the overall purpose of the FMLA, the district court found Congress abrogated the State's sovereign immunity in state court by enacting the self-care leave provisions. Consequently, the district court did not address the issue of express or implied waiver.

The case was tried and submitted to a jury on two legal theories. Lee claimed wrongful termination and retaliatory discharge for exercising her rights under the FMLA. The jury ultimately returned a verdict in favor of Lee for $165,122.

The State filed a motion requesting the court either enter a judgment notwithstanding the verdict or grant a new trial. Lee also filed several posttrial motions, including a motion for reinstatement of her

employment and other relief in the form of liquidated damages, front pay, and attorney fees.

In the motion for judgment notwithstanding the verdict, the State reiterated its position that Lee's claims were barred by the State's constitutionally based sovereign immunity. It also argued that it neither expressly nor constructively waived its immunity by placing the FMLA provisions in its employee handbook and notices around the workplace. Lee asserted the State constructively waived its immunity by failing to inform its employees that it was retaining its immunity. Lee also argued the State waived its immunity through its conduct in implementing the FMLA provisions with knowledge that they were enforceable. Lee argued that her FMLA rights would be lost without a right to sue for money damages.

The district court denied the motion for judgment notwithstanding the verdict. It again held Congress abrogated the State's immunity. Additionally, it found the State constructively waived its immunity by placing the FMLA provisions in the handbook and posting notice of the right to take FMLA leave. It stated:

> The FMLA is explained in their personnel policies handbook and posted in the Clerk of Court's office. Employees are aware that they have the right under the FMLA to take leave for their own illnesses. Nowhere did Defendants indicate that one specific type of leave, self-care leave, is not permitted or that employees would have no recourse if they were terminated or retaliated against for taking self-care leave. Furthermore, the state employees testified they knew it was illegal to terminate or retaliate against someone for using FMLA leave. Thus, the State has waived any immunity through its conduct.

The district court entered judgment against the State for the back-pay damages as determined by the jury, in addition to reinstatement of

employment and benefits, front pay, liquidated damages, attorney fees, and educational training for supervisors.

The State appealed. In a separate proceeding, we granted the State's motion to stay the judgment pending this appeal. We transferred the case to the court of appeals. The court of appeals determined that Congress validly exercised its power in Section Five of the Fourteenth Amendment to abrogate the State's immunity to suit under the self-care provision of the FMLA. It further found the State impliedly waived its immunity to suit through the actions of the executive branch in allowing State employees FMLA leave.

The State requested further review, which we granted. We subsequently held the case in abeyance pending a decision by the Supreme Court of the United States in *Coleman v. Court of Appeals of Maryland*, ___ U.S. ___, 132 S. Ct. 1327, ___ L. Ed. 2d ___ (2012).

## II. Standard of Review.

We review a district court's decision to deny a motion for judgment notwithstanding the verdict for errors at law. *Van Sickle Constr. Co. v. Wachovia Commercial Mortg., Inc.*, 783 N.W.2d 684, 687 (Iowa 2010). In reviewing the court's decision, we must determine whether sufficient evidence existed to justify submitting the case to the jury at the conclusion of the trial. *Id.* We view the evidence in the light most favorable to the nonmoving party. *Id.*

## III. Discussion.

The Family and Medical Leave Act was enacted by Congress in 1993. Family and Medical Leave Act of 1993, Pub. L. No. 103–3, 107 Stat. 6 (1993) (codified at 29 U.S.C. ch. 28). It entitles eligible employees to take unpaid leave from their jobs for a number of qualifying reasons for a period of up to twelve work weeks each year with guaranteed job

protection. 29 U.S.C.A. § 2612(a)(1) (West, Westlaw through P.L. 112–104 (excluding P.L. 112–96 and 112–102)).[2] The first three reasons that permit leave are typically collectively referred to as the "family-care provisions." They authorize a worker to take leave to care for family members during the birth and care of a child, adoption of or foster care of a child, or care of a spouse, child, or parent who has a "serious health condition." The fourth reason is referred to as the "self-care provision." It allows an employee to take leave due to the employee's own "serious health condition" that makes the employee unable to perform the functions of his or her job.

The Act also creates a private right of action for employees to sue employers in court for violating the law. *Id.* § 2617(a)(2). Both equitable relief and money damages are available against employers who interfere with the exercise of the rights of employees. *Id.* Moreover, Congress expressly authorized employees to bring suit against any employer, including a state or public agency, in state or federal court. *Id.*

---

[2]The qualifying reasons include:

(A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter.

(B) Because of the placement of a son or daughter with the employee for adoption or foster care.

(C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.

(D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

(E) Because of any qualifying exigency (as the Secretary shall, by regulation, determine) arising out of the fact that the spouse, or a son, daughter, or parent of the employee is on covered active duty (or has been notified of an impending call or order to covered active duty) in the Armed Forces.

29 U.S.C.A. § 2612(a)(1).

The portion of the Act that authorizes employees to bring suit against a state gives rise to the issues presented in this case. The Eleventh Amendment to the United States Constitution, in part, protects nonconsenting states from private suit in their own courts over federal law claims. This principle is a component of the broader doctrine of sovereign immunity. *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363, 121 S. Ct. 955, 962, 148 L. Ed. 2d 866, 877 (2001). Yet, such immunity can be waived by consent of the state or may be abrogated by a valid act of Congress. *Id.* Both doctrines are raised in this case to support the claim brought by Lee against the State.

The parties dispute whether the State's waiver or consent to being sued under the FMLA can be implied from the judicial branch policies that allow FMLA leave and whether Congress properly abrogated the State's immunity. The State argues it is immune from private suit in state court unless it expressly consents. Lee acknowledges the State's general immunity, but asserts it waived its immunity by its conduct in this case.

The question of sovereign immunity involves the jurisdiction of the court to resolve disputes between private citizens and their state. *See* Caleb Nelson, *Sovereign Immunity as a Doctrine of Personal Jurisdiction*, 115 Harv. L. Rev. 1559, 1609 (2002) (recognizing the United States Supreme Court's sovereign immunity jurisprudence is composed of a hybrid of personal and subject matter jurisdiction principles). If the State is cloaked with immunity from suit in state court from claims under the self-care provision, injured employees are precluded from suing for monetary relief. *See Coleman*, ___ U.S. at ___, 132 S. Ct. at 1350, ___ L. Ed. 2d at ___ (Ginsburg, J., dissenting).

### A. Sovereign Immunity.

1. *History and origin.* At the outset, we note the current state of the principle of sovereign immunity is complex and overall controversial. *See* Jesse H. Choper & John C. Yoo, *Who's Afraid of the Eleventh Amendment? The Limited Impact of the Court's Sovereign Immunity Rulings*, 106 Colum. L. Rev. 213, 214 (2006) (noting "[t]he Court's Eleventh Amendment jurisprudence has come in for heavy scholarly criticism"). The general notion of sovereign immunity originated from the sixteenth-century English maxim that "the king can do no wrong." Note, *Separation of Powers and the Discretionary Function Exception: Political Question in Tort Litigation Against the Government*, 56 Iowa L. Rev. 930, 933 (1971). In the absence of a monarchy, the principle of governmental immunity was adopted by American courts using a different rationale, "[T]hat there could be no legal right against the sovereign authority that makes the law on which the right depends." *Id.*

Early cases applying sovereign immunity in our country were generally in tort. *See State v. Sharp*, 189 P. 631, 632 (Ariz. 1920) (dismissing claim against state of Arizona for injuries sustained by state employee doing construction), *overruled by Stone v. Ariz. Highway Comm'n*, 381 P.2d 107, 109, 112 (Ariz. 1963); *Mower v. Inhabitants of Leicester*, 9 Mass. 247, 250 (1812) (dismissing claim of private citizen against city for injuries on city bridge). Iowa courts recognized and applied the rule of immunity as early as 1855. *Chance v. Temple*, 1 Iowa 179, 201 (1855). The doctrine departed from its absolute terms in 1973, when we determined sovereign immunity may be impliedly waived by the State in certain cases. *Kersten Co. v. Dep't of Soc. Servs.*, 207 N.W.2d 117, 119 (Iowa 1973). We recognized immunity in our state courts was "judicially created," and as a result, the rule could be "judicially

renounce[ed]." *Id.* at 118. We subsequently affirmed the principle that "consent to suit or waiver of sovereign immunity need not always be restricted to legislative enactment." *State v. Dvorak*, 261 N.W.2d 486, 489 (Iowa 1978). In both instances, the rule of immunity was waived because the State had voluntarily created legal relationships with private citizens that subjected it to liability. *Id.* (concluding, since the State voluntarily became a landowner, it must accept the obligations of any other landowner); *Kersten*, 207 N.W.2d at 120 ("[T]he State, by entering into a contract, agrees to be answerable for its breach and waives its immunity from suit to that extent.").

Iowa was not the only state to advance the notion of government liability for common law claims in state courts. *See Backus v. State*, 203 P.3d 499, 502 (Ariz. 2009) (recognizing the legislature's intent to enact a presumption against general governmental immunity); *see also Hargrove v. Town of Cocoa Beach*, 96 So. 2d 130, 133 (Fla. 1957) (holding municipality could be liable for negligent acts of its police officers); *Pierce v. Yakima Valley Mem'l Hosp. Ass'n*, 260 P. 2d 765, 774 (Wash. 1953). Yet, until the United States Supreme Court's decision in *Alden v. Maine*, 527 U.S. 706, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999), the issue of whether a state could be sued without its consent in its own courts for the enforcement of federal rights was not broadly discussed. Roger C. Hartley, *Alden Trilogy: Praise and Protest*, 23 Harv. J.L. & Pub. Pol'y 323, 337 (2000) [hereinafter Hartley]. In *Alden*, the Court recognized states obtained their immunity from suit under federal statutes from the structure of the Federal Constitution. *Alden*, 527 U.S. at 749–50, 119 S. Ct. at 2264, 144 L. Ed. 2d at 675. It reasoned the rule of immunity was built into the Constitution to prevent " 'the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of

private parties' . . . regardless of the forum." *Id.* at 749, 119 S. Ct. at 2264, 144 L. Ed. 2d at 675 (quoting *In re Ayers*, 123 U.S. 443, 505, 8 S. Ct. 164, 183, 31 L. Ed. 216, 229 (1887)). The Court's interpretation cited historical evidence to support its focus on the importance of "state autonomy, fiscal predictability, and political accountability" and its corresponding disapproval of "individuals' ability to influence the course of government through litigation." Hartley, 23 Harv. J.L. & Pub. Pol'y at 350. On the same day, the Court rejected the principle of constructive waiver of sovereign immunity in federal courts as unconstitutional. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682, 119 S. Ct. 2219, 2229, 144 L. Ed. 2d 605, 620 (1999). This backdrop frames the substantive issues presented on appeal.

2. *Preservation of error.* Before addressing the substantive issues, we first consider the argument by Lee that the State failed to preserve error because it did not allege Tenth Amendment sovereign immunity in district court. Instead, the State alleged only Eleventh Amendment sovereign immunity, which it asserts applies equally in state court and federal court. Even though the district court recognized the State's argument as an assertion of immunity, Lee argues it was not properly raised, and as a result, it is not preserved for our review.

In addressing the source of states' sovereign immunity to suit under federal statutes in state court, the United States Supreme Court has said:

> We have . . . sometimes referred to the States' immunity from suit as "Eleventh Amendment immunity." The phrase is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment. Rather, as the Constitution's structure, its history, and the authoritative interpretations by this Court make clear, the States' immunity from suit is a fundamental aspect of the

> sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today . . . except as altered by the plan of the Convention or certain constitutional Amendments.

*Alden*, 527 U.S. at 713, 119 S. Ct. at 2246–47, 144 L. Ed. 2d at 652. In *Alden*, suit was commenced against the State of Maine in its own state court under the Federal Fair Labor Standards Act. *Id.* at 711–12, 119 S. Ct. at 2246, 144 L. Ed. 2d at 651–52. The State of Maine declared it was immune from suit under the Eleventh Amendment. *Id.* The United States Supreme Court found the general principle of sovereign immunity applied in state courts as reflected in the Eleventh Amendment. *Id.* at 733, 119 S. Ct. at 2256, 144 L. Ed. 2d at 665.

In this case, the argument by the State identifies the Eleventh Amendment as the source of its defense. The substance of the State's argument is generally that it is immune from claims against it under the self-care provision of the FMLA in state court. This argument is identical to the argument made by the State of Maine in *Alden*, in which the United States Supreme Court decided the Eleventh Amendment reflected a broad constitutional principle of sovereignty that should apply both in state and federal courts. *Id.*

We recognize the fundamental doctrine of appellate review that issues must be raised in the district court before we may review them on appeal. *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Yet, the underlying purpose of our error preservation rule provides guidance to us in determining whether an issue has been raised and decided prior to appeal. *State v. Mann*, 602 N.W.2d 785, 790 (Iowa 1999). In particular, " 'the requirement of error preservation gives opposing counsel notice and an opportunity to be heard on the issue and a chance to take proper corrective measures or pursue alternatives in the event of an adverse

ruling.' " *Id.* (quoting *State v. Tobin*, 333 N.W.2d 842, 844 (Iowa 1983)). We will not exalt form over substance when the objectives of our error preservation rules have been met. *Id.* at 791.

We find the State preserved its sovereign immunity argument. The State generally argued it is immune from suit in its own court for claims under the FMLA. Lee disputed this argument by asserting implied waiver of immunity and congressional abrogation. The district court considered both arguments in its ruling and found the State was generally immune, but that its immunity had been abrogated by Congress under the self-care provision of the FMLA. Nothing in the proceedings would have been altered had the State argued the source of its immunity differently. Because we find the objectives of the error preservation rules are met, we proceed with merits of the appeal. We first consider whether or not Congress abrogated sovereign immunity of states when it enacted the self-care provision of the FMLA.

**B. Congressional Abrogation of Immunity**. The district court denied the State's claim of immunity based on its finding that Congress abrogated the sovereign immunity of states when it enacted the self-care provision of the FMLA and entered judgment against the State based on the jury verdict. The State argues the judgment must be reversed because Congress did not act pursuant to a proper grant of power under the Federal Constitution to abrogate the State's immunity under the FMLA self-care provision.

The Supreme Court of the United States recently held that suits against states under the self-care provision of the FMLA are barred by sovereign immunity because Congress failed to validly abrogate the states' immunity from suit. *Coleman*, ___ U.S. at ___, 132 S. Ct. at 1332–33, ___ L. Ed. 2d at ___. The Court found there was insufficient evidence

to show Congress enacted the self-care provision of the FMLA to enforce the constitutional guarantees of equal protection by remedying or preventing sex discrimination or sex stereotyping. *Id.* at \_\_\_, 132 S. Ct. at 1335, \_\_\_ L. Ed. 2d at \_\_\_. Consequently, Congress has not abrogated Iowa's immunity from suit under the self-care provision of the FMLA, and we turn to consider whether the State has waived that defense.

**B. Consent or Waiver of Immunity**. The State argues the district court erred by finding it constructively waived immunity under the FMLA self-care provision by informing its employees of the availability of FMLA leave. Lee responds by further asserting the State expressly waived suit under the self-care provision of the FMLA by enacting Iowa Code chapter 97B governing the Iowa Public Employees' Retirement System. We decline to address the issue of express waiver because it was not presented to or ruled upon by the district court. *See Meier*, 641 N.W.2d at 537 ("[I]ssues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). As a result, we proceed to address the constructive waiver arguments.

We first recognized constructive waiver of sovereign immunity in *Kersten*, a case in which the State appealed from a district court decision refusing to grant its special appearance asserting the defense of sovereign immunity in a suit based on the alleged breach of contract between the department of social services and a private corporation. 207 N.W.2d at 118. We departed from our prior precedent that declared only the legislature, through an express statute, could give consent for the State to be sued. *Id.* at 119. We recognized that contracts impose corresponding obligations on parties, and we were unwilling to permit the State to maintain it was immune from suit for breach of its obligations. *See id.* at 119–20. Our court reasoned that allowing the

State to avoid liability for breaching a contract would ascribe "bad faith and shoddy dealing" to a sovereign. *Id.* at 120. Thus, we concluded the State waives its immunity from breach-of-contract suits by entering into a contract. *Id.* at 122. Additionally, following *Kersten*, we held sovereign immunity could not prevent the State from being called into state court to accept the legal obligations and duties attendant to voluntarily becoming a landowner. *Dvorak*, 261 N.W.2d at 489. The two cases reflected our belief that the State is answerable for the legal relationships it voluntarily creates. *See Swanger v. State*, 445 N.W.2d 344, 349 (Iowa 1989) (recognizing *Kersten* and *Dvorak* were premised on the State voluntarily undertaking legal relationships). If the legislature has developed an exclusive and comprehensive system for private suit on particular types of claims, we have made it clear that we strictly follow the statutory guidelines waiving the State's immunity. *Id.*

Ten years after we decided *Swanger*, the United States Supreme Court decided *College Savings Bank*, which held that conduct by a state was insufficient to waive its constitutional right to be sovereign. 527 U.S. at 682, 119 S. Ct. at 2229, 144 L. Ed. 2d at 620. In *College Savings Bank*, an agency of the State of Florida was sued by a bank in federal court under the Lanham Act. *Id.* at 671, 119 S. Ct. at 2223–24, 144 L. Ed. 2d at 613. The Act provided a private cause of action for conduct by a state involving interstate marketing and administration of a program. *Id.* at 670, 119 S. Ct. at 2223, 144 L. Ed. 2d at 613. The Court found the effort by Congress to define the conduct by states that would constitute waiver of immunity ineffective. *Id.* at 681, 119 S. Ct. at 2228, 144 L. Ed. 2d at 619. The Court emphasized that sovereign immunity was grounded in the Constitution and that the "classic description of an effective waiver of a constitutional right is the

'intentional relinquishment or abandonment of a known right or privilege.' " *Id.* at 682, 119 S. Ct. at 2229, 144 L. Ed. 2d at 620 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461, 1466 (1938)). Thus, the test for whether a state has waived its sovereign immunity in federal court requires evidence of express consent to suit, a "clear declaration" that the state intends to submit itself to federal court jurisdiction. *Id.* at 676, 119 S. Ct. at 2226, 144 L. Ed. 2d at 616. Implied or constructive waiver is insufficient to waive the state's constitutional right. *Id.* at 680, 119 S. Ct. at 2228, 144 L. Ed. 2d at 619.

We applied the express waiver standard in *Anthony v. State*, 632 N.W.2d 897, 900 (Iowa 2001). In *Anthony*, state employees sued the department of public safety for overtime pay requirements under the Fair Labor Standards Act (FLSA). 632 N.W.2d at 899. In noting the strong presumption of state sovereignty expressed by the Constitution, we examined post-*Alden* decisions from other state courts that found express waiver sufficient to waive immunity. *Id.* at 900. We applied the broad understanding of constitutionally protected immunity reflected by the Eleventh Amendment and confirmed by the Tenth Amendment to our analysis and ultimately found the Iowa Wage Payment Collection Law expressly waived the state's immunity under the FLSA. *Id.* at 901–02. We subsequently affirmed the application of these principles in *Raper v. State*, 688 N.W.2d 29, 54 (Iowa 2004).

The State argues the development of our law since *Kersten* and *Dvorak* reveals constructive waiver of sovereign immunity could not apply under the FMLA because it was acting to implement a comprehensive federal mandate. Instead, the State argues only express waiver could apply under the FMLA, which Lee failed to raise.

We reject the argument by the State that we no longer recognize constructive waiver of immunity. We adopted the doctrine of constructive waiver in *Kersten* based on the public policy that it would be abhorrent to permit the State to enter into contracts with no corresponding obligation to perform its promises under the contract. The same public policy grounds that supported the adoption of the doctrine at that time exist today, and our constructive-waiver doctrine similarly remains viable today despite the federal approach to limit waiver of sovereign immunity to express waiver. Thus, we turn to examine if the district court was correct to find constructive waiver of immunity in this case.

The district court in this case found the judicial branch constructively waived the State's immunity "through its conduct." This conduct was identified in three ways. First, the judicial branch used its employee handbook to inform employees of their right to take self-care leave under the FMLA. Second, the judicial branch failed to inform the employees they could not sue the State for money damages if they were terminated for taking self-care leave. Third, supervising employees of the judicial branch knew it was illegal to terminate employees for taking self-care leave.

As to the first type of conduct identified by the district court, our law recognizes that provisions contained in state employee handbooks can support constructive waiver of sovereign immunity. Employee handbooks can create contracts between employers and employees. *Anderson v. Douglas & Lomason Co.*, 540 N.W.2d 277, 283 (Iowa 1995). Although the State is generally immune from suits for money damages, *see Montandon v. Hargrave Constr. Co.*, 256 Iowa 1297, 1299, 130 N.W.2d 659, 660 (Iowa 1964) (recognizing the general common law rule

of immunity), the State may constructively waive its immunity by entering into a contract. *Kersten*, 207 N.W.2d at 120. Thus, if a state employee handbook creates a contract, the State constructively waives its immunity from suit over that contract.

Yet, Lee did not bring a breach-of-contract claim, and she never sought to establish that the handbook created a contract.[3] Thus, this case is distinguished from *Kersten* because the State in that case did not dispute the existence of a contract, but only asserted it should be immune from suit for breach of contract.

Nevertheless, we have not confined the constructive waiver of immunity doctrine to contracts entered into by the State, but have applied it in other circumstances where the State voluntarily assumes legal consequences. *See Dvorak*, 261 N.W.2d at 489. Thus, in addition to conduct by the State in entering into a contract, other conduct of the State can give rise to constructive waiver of immunity. Therefore, we must review the findings of the district court to determine if they support

---

[3]The summary judgment record and trial record show this case was tried and submitted to the fact finder on Lee's claims of interference with FMLA rights and retaliatory discharge for taking FMLA leave. The verdict, accordingly, revealed no finding the FMLA leave provisions of the handbook created a contract. Additionally, the district court made no such separate finding. The district court made no such finding because the issue was never presented. Instead, the focus of the underlying claims litigated at trial was the FMLA constituted federal law that state employers were required to follow. The issue of implied waiver of immunity was only raised by Lee as an alternative legal argument in response to the State's legal defense that it was immune from suit because Congress never intended to abrogate states' immunity in enacting the FMLA.

Consequently, the district court addressed Lee's implied-waiver argument and accepted it by concluding the conduct of the State in putting the FMLA leave provisions in the handbook constituted implied waiver of immunity. Thus, we can only review whether this legal conclusion by the district court was legal error based on the issues presented by the parties. We therefore do not consider the issue of whether the handbook was an implied contract under Iowa law, a claim not presented to the district court.

the legal conclusion that the State constructively waived its immunity based on the conduct identified by the district court.

We begin our review of the district court decision with two important legal considerations. First, under 29 C.F.R. § 825.300–.301(a)(1) (2003), employers covered by the FMLA were required to post notice of employees' rights under the Act in prominent places on the premises and in employee handbooks. Second, under the FMLA, Congress exercised its federal supremacy powers over the states to provide self-care leave to state employees. Thus, the states were not only required to provide self-care leave to their employees under the FMLA, 29 U.S.C. § 2612(a)(1)(D), they were also directed to inform employees about the self-care provisions by placing notice of the provisions in employee handbooks. 29 C.F.R. § 825.300–.301(a)(1). Yet, Lee presented no evidence to suggest that the inclusion of the self-care leave provisions in the handbook was for any purpose other than to comply with the federal regulation implementing the FMLA. It was incumbent on Lee to produce evidence to show the State did not place the provisions in its handbook to comply with federal law. *See Race v. Iowa Elec. Light & Power Co.*, 257 Iowa 701, 706, 134 N.W.2d 335, 338 (Iowa 1965) ("A party having the affirmative of a proposition is always required to prove it.").

The district court also supported its decision by finding the State, in implementing the FMLA through the employee handbook, failed to inform workers that its immunity would be retained. Lee, however, had the burden to show that the exclusion of the language was designed to waive sovereign immunity. Again, Lee failed to produce any such evidence.

Likewise, knowledge by judicial branch employees that it would be illegal to terminate an employee for using FMLA leave does not tend to

make the conduct of implementing the federal mandate voluntary. Knowledge of the federal supremacy doctrine does not make implementation of a federal statute prima facie proof of a voluntary offer to pay money damages for the statute's violation.

We conclude the district court erred as a matter of law in concluding the State constructively waived its immunity by placing FMLA leave provisions in its employee handbook. The circumstances of this case are vastly different from *Kersten* and *Dvorak* and cannot support constructive waiver of immunity protected under the constitution.

**IV. Conclusion**.

The cloak of immunity granted to the State precludes state employees from suing the state for monetary relief when denied self-care leave under the FMLA. *Coleman*, ___ U.S. at ___, 132 S. Ct. at 1350, ___ L. Ed. 2d at ___ (Ginsburg, dissenting). Nevertheless, states are bound to follow the self-care provisions of the FMLA, and state employees who are wrongfully denied self-care leave are still permitted to seek injunctive relief against the responsible state official. *Id.* (citing *Ex parte Young*, 209 U.S. 123, 155–56, 28 S. Ct. 441, 452, 52 L. Ed. 714, 727 (1908) (establishing proposition that suit for injunctive relief against state official does not offend sovereign immunity)). Additionally, the U.S. Department of Labor may bring actions for damages or an injunction on behalf of an employee against a state for violating the self-care provisions. *See* 29 U.S.C.A. § 2617(b)(2)–(3), (d).

In this case, the judgment entered by the district court was predicated on legal error. Accordingly, the noninjunctive relief granted in the judgment cannot stand, and we must reverse the district court. We remand the case to the district court to determine what relief granted in its judgment is still available to Lee within the framework of this lawsuit,

findings of the jury at trial, and the cloak of immunity protecting the State. The district court shall permit the parties to be heard on this issue and enter a new final judgment for such relief. We do not retain jurisdiction. Costs are assessed to Lee.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS.**

All justices concur except Mansfield, J., who takes no part.