# IN THE COURT OF APPEALS OF IOWA

No. 18-0731
Filed January 23, 2019

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**JASIAH THANE FINCK,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Warren County, Patrick W. Greenwood, Judge.

Jasiah Finck appeals the district court's denial of his motion for a new trial. **AFFIRMED.**

Patrick W. O'Bryan, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Israel Kodiaga, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Mullins and Bower, JJ.

**MULLINS, Judge.**

The evidence presented at trial includes the following. Jasiah Finck and Shawna Davidson[1] were married in 2006. Their marriage was dissolved in 2009. The marriage produced one child, C.D., born in 2008. The dissolution-of-marriage decree awarded Shawna sole legal custody and physical care of the child. As to visitation, the decree ordered:

> Jasiah Finck . . . shall have rights of visitation as the parties may agree. If the parties are unable to agree, Jasiah will have visitation every Monday (8:00 a.m. until noon) and every Wednesday (8:00 a.m. until noon). All visitations shall take place at Shawna's residence or at another mutually agreeable location until Jasiah Finck has his own suitable residence. If Jasiah is to transport [C.D.] he shall utilize a licensed driver or shall show proof to Shawna Davidson that he has a valid driver's license.

The decree has never been modified.

In or about 2015, Shawna and C.D. moved to South Carolina and Shawna remarried. In March 2017, as a result of C.D.'s school and behavioral issues and some problems between C.D. and his stepfather, Shawna contacted Finck and proposed C.D. return to Iowa and live with Finck's parents, Kirk and Gwen, for approximately six months. Finck forwarded the proposal to his parents, and they agreed. The arrangement was for Kirk and Gwen to care for the child in their home, and the child could potentially be transitioned into Finck's care after six months if he showed the ability to be a responsible parent. Finck moved into his parents' home the same day as C.D. Gwen testified Finck moved in with them "because he didn't have anyplace else to go at the time." The arrangement went well for the first few months but eventually soured as a result of Finck's lifestyle

---

[1] Now known as Shawna McDonald.

choices. In early July, Gwen and Kirk asked Finck to find his own place to live and advised Shawna it would be in C.D.'s best interests to move back to South Carolina. Finck was upset about his parents' decision to send C.D. back to South Carolina. He moved out of his parents' home on or about July 3.

On July 11, a Tuesday, when Shawna was on her way to Iowa to retrieve C.D., Finck, unbeknownst to Gwen and Kirk, picked the child up from his day program shortly after the lunch hour and did not return him home. Finck text messaged Gwen at 3:30 p.m. and advised he retrieved the child from school and was taking him to a friend's overnight. Finck did not advise who the friend was or where the friend lived. Gwen stated her disagreement with the same and requested to speak with C.D.; Finck denied her request. Gwen learned from a third party that Finck may have taken the child to the Kansas City area. Gwen conveyed the information to Shawna for the purpose of letting her decide what should be done about the situation.

Pursuant to her discussion with Shawna,[2] Gwen ultimately made contact with law enforcement and advised C.D. was missing, Finck had taken him from school, and Finck reported they would be back by noon on July 12. However, by approximately 1:15 p.m. on July 12, the child had yet to be returned. By this point in time, neither Finck's parents nor Shawna had been able to reach Finck to verify his and the child's whereabouts. At approximately 2:11 p.m., Shawna received the following text message from Finck: "I'm having car troubles in a little town on the Iowa border. Getting my car fixed. I'll be back. [C.D.] will be back in school by

---

[2] Shawna did not testify at trial.

4:30." Gwen was able to make contact with Finck at 2:30 p.m., at which time he advised he would have the child back in two hours. At roughly 3:00 p.m., law enforcement decided to triangulate Finck's cell phone to attempt to verify his location. Records received from the cell phone company showed Finck was in the Kansas City area from 2:00 a.m. until 3:00 p.m., at which time Finck's phone powered down. Local law enforcement put a report out to Iowa and Kansas City law enforcement to be on the lookout for Finck as a noncustodial child abductor. Finck was apprehended at approximately 5:15 p.m. in the Kansas City area. The arresting officer observed Finck's vehicle to be functioning properly.

Finck testified at trial on his own behalf. He testified no restrictions were placed upon his time with C.D. while the child was living with Kirk and Gwen. He testified he has "full rights" to C.D. and he did not believe he had to ask for anyone's permission to take him somewhere. He also testified that on the day in question he picked C.D. up from school shortly after lunch and "left for Kansas City." He did not immediately advise anyone of his plan because he "didn't feel that [he] needed to." Between 3:00 and 4:00 p.m., Finck advised his mother he had picked C.D. up from the day program, but he did not tell her he was taking the child to Kansas City; Finck could not recall during his testimony when he advised Shawna of the same. Finck testified his intention was to return the following day or the following night. He also testified he was in contact with Shawna "probably a half a dozen" times on July 12. He then testified his phone died because he was experiencing electrical problems with his car and could not charge his cell phone. According to Finck, when he was apprehended by law enforcement, he was preparing to leave the Kansas City area around "6:30 or 7" p.m. and return to Iowa

with the child. Finck conceded on cross-examination that he knew Shawna was "upset" about the situation and that he never contacted Shawna or Gwen to advise he would not be returning the child on time. However, he maintained the position that he and Shawna reached an agreement that he could take C.D. to Kansas City and his actions were not in violation of that agreement.

In relation to the foregoing events, Finck was charged by trial information with third-degree kidnapping and violating a custodial order.[3] A jury found him guilty of the latter charge. Finck filed a motion for a new trial, arguing "there was insufficient evidence to convict."[4] The court denied the motion, and Finck appealed following the imposition of sentence.

We review the district court's denial of a motion for a new trial on weight-of-the-evidence grounds for an abuse of discretion, our most deferential standard of review. *See State v. Neiderbach*, 837 N.W.2d 180, 190 (Iowa 2013); *see also State v. Roby*, 897 N.W.2d 127, 137 (Iowa 2017). An abuse of discretion will only be found where "the district court exercised its discretion on grounds or for reasons

---

[3] The second count was charged in an amended trial information.

[4] In the district court and on appeal, Finck frames his argument as a mixture of the sufficiency and weight of the evidence. On appeal, the State interprets Finck's challenge as one concerning the sufficiency of the evidence and maintains any claim concerning the weight of the evidence is waived. Because sufficiency- and weight-of-the-evidence claims are distinct, *see State v. Ellis*, 578 N.W.2d 655, 658–59 (Iowa 1998), and Finck is appealing the denial of his motion for a new trial, rather than the court's denial of his motions for judgment of acquittal, we interpret his argument as one concerning only the weight of the evidence, a claim of which the State was given proper notice below. *Compare* Iowa R. Crim. P. 2.24(2)(b)(6) (allowing court to grant new trial "when the verdict is contrary to . . . evidence"); *Ellis*, 578 N.W.2d at 659 (noting "contrary to . . . the evidence" means "contrary to the weight of the evidence"), *with* Iowa R. Crim. P. 2.19(8)(a) (allowing court to grant a motion for judgment of acquittal "after the evidence on either side is closed if the evidence is insufficient to sustain a conviction"); *cf. Lee v. State*, 815 N.W.2d 731, 739 (Iowa 2012) ("We will not exalt form over substance when the objectives of our error preservation rules have been met.").

clearly untenable or to an extent clearly unreasonable." *State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003).

The jury was instructed the State was required to prove all of the following elements for the crime of violating a custodial order:

> 1. On or about the 12th day of July, 2017, Shawna McDonald had custody or physical care of [C.D.] by court order.
> 2. Defendant was a relative of the child.
> 3. The defendant took and concealed [C.D.] from Shawna McDonald in violation of a court order.
> 4. [C.D.] was under the age of fourteen.

In his new-trial motion, Finck only challenged the weight of the evidence as to element three. In ruling on Finck's motion for a new trial, the district court noted its consideration of both inculpatory and exculpatory evidence as well as the credibility of the witnesses. The court concluded the State's witnesses were generally credible and implied, as a result of Finck's demeanor at trial and motivation to be untruthful, he was not as credible as the State's witnesses. The court considered the evidence presented, determined whether it preponderated heavily against the jury's affirmative finding on the third element of the crime, and ultimately concluded it did not.

Our review is limited to "the exercise of discretion by the trial court, not of the underlying question of whether the verdict is against the weight of the evidence." *Neiderbach*, 837 N.W.2d at 211 (quoting *Reeves*, 670 N.W.2d at 203). Here, the district court considered credibility, weighed the evidence, and gave reasons for its conclusion that the verdict was not contrary to the weight of the evidence. This is exactly what the court is required to do under the weight-of-the-evidence standard. *See Reeves*, 670 N.W.2d at 209. Although this may have

been a case in which the evidence on the challenged element was "nearly balanced" or was "such that different minds could fairly arrive at different conclusions," the district "court should not disturb the jury's findings" in such a case. *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006). We are unable to say the district court exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable. Consequently, we affirm the district court's denial of Finck's motion for a new trial.

**AFFIRMED.**